## COMMONWEALTH *vs.* MICHAEL LEAVEY.

No. 02-P-674.

Berkshire. May 9, 2003. - January 2, 2004.

Present: GREENBERG, BECK, & GREEN, JJ.

*Assault by Means of a Dangerous Weapon. Evidence,* Hearsay, Spontaneous utterance. *Practice, Criminal,* Hearsay, Sentence, Assistance of counsel.

At the trial of a criminal complaint charging the defendant with assault by means of a dangerous weapon, evidence consisting of the excited utterances of the victim on the night of the incident alone was sufficient to convict the defendant of the crime charged, despite the victim's recantation of her accusations at trial, where the victim's extrajudicial statements were deemed reliable enough to be admitted in evidence because they were made in relation to an exciting or shocking event at a time when she was under the sway of the exciting event, and her recantation went only to the weight that the finder of fact could give the spontaneous utterance. [251-252]

The judge at the trial of a criminal complaint charging the defendant with assault by means of a dangerous weapon did not rely on impermissible considerations when imposing sentence, where, although the judge should not have conferred privately with the jurors prior to sentencing the defendant, his conference did not appear to have affected his determination at the subsequent sentencing hearing, and where the judge's inquiry into the status of a pending charge against the defendant in another court did not indicate that he intended to punish the defendant for a crime different from that of which he had been convicted, but rather indicated that the judge was exploring the possibility of a disposition that might have included a concurrent sentence with the other charge [252-254]; moreover, there was no merit to the defendant's claim that his counsel was ineffective for failing to present evidence of mitigating circumstances at the sentencing hearing [254].

COMPLAINT received and sworn to in the Pittsfield Division of the District Court Department on July 23, 2001.

The case was tried before *Alfred A. Barbalunga,* J.

*Ronald H. Cody* for the defendant.

*Rachael T. Eramo,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. When at midnight on July 22, 2001, the victim sought refuge from the defendant, she fled through the woods to a nearby house. Her neighbor was still awake and heeded her cry for help. The victim made no bones about the reason: "He's going to kill me, he's going to kill me, you have to help me." The neighbor immediately called 911 while the victim closeted herself in the neighbor's upstairs bathroom. The victim asked if the neighbor had called 911 and if the police were coming. The victim wanted to call 911 again, so the neighbor gave her the phone. The victim told the 911 dispatcher that the defendant "has a butcher knife, threatening to cut me up in pieces," and that she had been tortured for the past hour. The police responded right away and took the victim's statement, which the responding officer described as laced with bouts of crying and upset. A quick trip by the police to the defendant's residence disclosed nothing, least of all the defendant, who was not there. The victim obtained an emergency restraining order and emergency housing. On July 23, 2001, the police lodged criminal complaints in the District Court charging the defendant with assault and battery, assault by means of a dangerous weapon, and kidnapping. Trial commenced on October 23, 2001.

During the trial, the victim recanted her accusations against the defendant. Instead, she told the jury that, on the occasion in question, she came home earlier than expected and discovered the defendant in bed with another woman. An altercation ensued between the two women. The other woman "kept trying to explain" and even threatened the victim with a knife to get her to listen, but eventually the victim "just ran out of the house." She explained to the jury that, on route to the nearby neighbor's residence, she concocted the story about the defendant as a reprisal for his bedding down with the other woman.

At the close of the Commonwealth's case and again at the close of all the evidence, the defendant moved for a required finding of not guilty on the ground that there was no physical or other evidence to corroborate the victim's out-of-court accusations. They were admitted in evidence as "excited utterances" through the neighbor, the police officers, and the victim's recorded telephone call to the 911 dispatcher. The judge denied

the motions, and a six-person jury convicted the defendant of assault by means of a dangerous weapon.[1]

1. *Sufficiency of the evidence.* On appeal, the defendant claims that the conviction, based solely on excited utterance testimony, cannot stand. Where the alleged victim has recanted, his argument goes, there must be some independent evidence of the assault. He cites no support for this proposition.

We need not address the Commonwealth's suggestion that there was such independent, corroborating evidence (the victim ran to a neighbor's house at midnight, called 911, and obtained an emergency restraining order and emergency housing), because even if there were not, a recent decision of the Supreme Judicial Court, *Commonwealth* v. *Moquette*, 439 Mass. 697, 702 (2003), held that "[a] spontaneous utterance is sufficient, by itself, to support a conviction." See, e.g., *Commonwealth* v. *Alvarado*, 36 Mass. App. Ct. 604, 607 (1994). The defendant's argument rests on the dubious proposition that, because in other contexts we have required evidence in addition to out-of-court statements to support a conviction, a similar corroboration requirement should be imposed with spontaneous utterances. While it is true that a criminal defendant may not be convicted solely on the basis of an uncorroborated confession, for example, see *Commonwealth* v. *Forde*, 392 Mass. 453, 457-458 (1984), and that prior inconsistent grand jury testimony requires corroboration to support a conviction, see *Commonwealth* v. *Daye*, 393 Mass. 55, 74 (1984), the corroboration rule has not been extended to excited utterances. *Commonwealth* v. *Moquette*, 439 Mass. at 703.

Some hearsay evidence is deemed more reliable than other hearsay evidence. Here, the victim's extrajudicial statements are deemed reliable enough to be admitted because they were made in relation to an exciting or shocking event at a time when she was under the sway of the exciting event — a circumstance generally understood to negate premeditation or fabrication. See, e.g., *Commonwealth* v. *Whelton*, 428 Mass. 24, 26 (1998); *Commonwealth* v. *Mendrala*, 20 Mass. App. Ct. 398, 401 n.3 (1985). A defendant may, of course, controvert excited utter-

---

[1] The Commonwealth dropped the kidnapping charge, and the defendant was found not guilty of the assault and battery.

ances by other evidence, as the defendant did here with the victim's recantation. Such evidence, however, goes only to the weight to be given the spontaneous utterance by the finder of fact. See *Commonwealth* v. *Moquette*, 439 Mass. at 703. For purposes of satisfying the well-known *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), standard, as long as the statements meet the requirements for admission as excited utterances, they are sufficient to support a conviction. *Commonwealth* v. *Moquette*, 439 Mass. at 706-707.

2. *Sentencing.* The defendant also submits that the judge relied on impermissible considerations during the sentencing phase of the proceedings. Subsequent to the jury returning a guilty verdict in one of the two charges submitted to them, the judge, in open court, after describing the case as "difficult," informed the jurors that he concurred with their guilty finding. Then, before sentencing the defendant, the judge met with the jurors privately inside the jury room. When he returned, he inquired about an unrelated criminal complaint that the victim had brought against the defendant and was pending in another District Court. (It appears that matter did not involve domestic violence.) The judge stated, "I had offered 10/10. I wonder what the status of that is now." After learning that it was set for a jury trial on January 4, 2002, over two months hence, the judge stated, "Well, I'll hear you on sentencing on this. Then maybe we can address that."

The Commonwealth requested a sentence of two and one-half years in the house of correction "given [the defendant's] record." This is the maximum penalty within the District Court's sentencing authority for a conviction of an assault by means of a dangerous weapon. See G. L. c. 265, § 15A. Defense counsel declined to argue for a particular sentence, but requested that the sentence, of whatever length, be stayed pending appeal. That motion was denied, and defense counsel stated he had no further argument as to sentencing. At that point, the judge disclosed that he had discussed the case with the jurors and that they had come close to convicting the defendant on the assault and battery charge, as well as the charge of assault by means of a dangerous weapon. He then proceeded to impose the maximum sentence of two and one-half years in the house of

correction adding, "While we're here, is there any way we can take care of that other case?" The Commonwealth replied that it was "not in a position to take care of it right now." The judge then suggested the Commonwealth call the defense counsel in that case, who was not defense counsel in the present case, "and let him know what happened on this case. Maybe we can bring it forward and get rid of it. All right. Stand committed pursuant to the sentence here," at which point the trial concluded.

Since trial counsel lodged no objection during sentencing, we review the judge's actions and comments under the familiar "substantial risk of a miscarriage of justice" standard of *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). See *Commonwealth* v. *Souza*, 390 Mass. 813, 817 (1984) (applying *Freeman* standard to sentencing procedures). Although we fault the judge for the imprudent step of privately conferring with the jury prior to sentencing the defendant, it does not appear that it affected his determination at the subsequent sentencing hearing. The judge stated:

> "[The jurors] were that far away from finding him guilty on both matters. But they did not. They found him guilty on this. And I'm going to impose the sentence of two and a half years in the House of Correction with credit from August 8th. Stand committed pursuant to that sentence."

These comments make it clear that the judge was sentencing the defendant only on the basis of the one charge on which he had been convicted. Contrast *Commonwealth* v. *Lewis*, 41 Mass. App. Ct. 910, 911 (1996) (judge made intemperate remarks about defendant's extensive criminal record in way that "suggest[ed] that the defendant was punished for untried offenses"; resentencing required). There was no similar suggestion here.

Further, the judge's inquiry into the status of the pending charge against the defendant in another District Court did not indicate that he intended to punish the defendant for a crime different from that of which he had been convicted. See *Osborne* v. *Commonwealth*, 378 Mass. 104, 115 n.10 (1979). Rather, it appears that he was exploring the possibility of a

disposition that may have included a concurrent sentence with the other charge. Contrast *Commonwealth* v. *Henriquez*, 440 Mass. 1015 (2003) (sentence vacated where sentencing judge's comments regarding uncharged allegations of other offenses by defendant created ambiguity as to whether uncharged conduct was used for improper purpose in sentencing). In this case, there was no substantial risk of a miscarriage of justice in the sentencing of the defendant.

Finally, the defendant claims ineffective assistance of counsel on the ground that defense counsel failed to present evidence of mitigating circumstances. That contention is not accompanied by any suggestion of what mitigating circumstances trial counsel might have been argued. If there is no mitigation to be offered, counsel cannot be faulted for having failed to offer it. Contrast *Commonwealth* v. *Cameron*, 31 Mass. App. Ct. 928, 930 (1991) (ineffective assistance of counsel where known mitigation evidence not argued at sentencing).

*Judgment affirmed.*